Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/30/2019 09:05 AM CDT

Heath Wolter, appellee, v.
Christina Fortuna, appellant.

___ N.W.2d ___

Filed April 30, 2019.    No. A-18-267.

1. **Domicile: Intent: Words and Phrases.** Domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or site or by the present intention to make a location or site the person's permanent or fixed home.

2. **Child Custody: Jurisdiction.** Jurisdiction over a child custody proceeding is governed exclusively by the Uniform Child Custody Jurisdiction and Enforcement Act.

3. **Child Custody: Words and Phrases.** "Child custody proceeding" is defined under Neb. Rev. Stat. § 43-1227(4) (Reissue 2016) of the Uniform Child Custody Jurisdiction and Enforcement Act as a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue and includes a proceeding for paternity in which the issue of custody or visitation may appear.

4. **Child Custody: Jurisdiction: Appeal and Error.** In considering whether jurisdiction exists under the Uniform Child Custody Jurisdiction and Enforcement Act, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.

5. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

6. **Child Custody: Jurisdiction: States.** For a state to exercise jurisdiction over a child custody dispute, it must either be the home state as defined by the Uniform Child Custody Jurisdiction and Enforcement Act or fall under limited exceptions to the home state requirement specified by the act.

7. **Child Custody: Jurisdiction.** A Nebraska court has "last resort" jurisdiction to make an initial child custody determination under Neb. Rev.

Stat. § 43-1238(a)(4) (Reissue 2016) of the Uniform Child Custody Jurisdiction and Enforcement Act if no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of § 43-1238.

8. \_\_\_\_: \_\_\_\_. A decision to decline to exercise jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act for the reason of an inconvenient forum is entrusted to the discretion of the trial court.

9. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

10. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

11. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.

12. **Child Custody: Visitation: Appeal and Error.** Child custody determinations, and parenting time determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

13. **Visitation.** The trial court has discretion to set a reasonable parenting time schedule.

14. \_\_\_\_. The determination of reasonableness of a parenting plan is to be made on a case-by-case basis.

15. \_\_\_\_. Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent.

16. \_\_\_\_. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights.

17. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

18. **Paternity: Attorney Fees: Appeal and Error.** An award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed.

19. **Attorney Fees.** As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

20. **Paternity: Child Support: Attorney Fees: Costs.** Attorney fees and costs are statutorily allowed in paternity and child support cases.

21. **Child Custody: Jurisdiction: Attorney Fees.** Under the Uniform Child Custody Jurisdiction and Enforcement Act, the court shall award the prevailing party attorney fees unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

22. **Attorney Fees.** Customarily, attorney fees and costs are awarded only to the prevailing party or assessed against those who file frivolous suits.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Heath Wolter, pro se.

Riedmann, Bishop, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

Christina Fortuna appeals the order of the district court for Lancaster County, which established paternity and determined custody and parenting time for the parties' minor child. Finding no merit to the arguments raised on appeal, we affirm.

## BACKGROUND

Fortuna gave birth to a child in December 2015. In March 2016, Fortuna and the child moved from Nebraska to Florida in order to live with Fortuna's mother. In June, the Nebraska Department of Health and Human Services determined that Heath Wolter was the father of the child and sent notice to Fortuna and Wolter. Thus, on July 1, Wolter filed a complaint in the district court for Cass County asking the court to enter an order for custody, parenting time, and child support.

At the same time, Wolter filed a motion for ex parte temporary custody. The court declined to enter an ex parte order but set the matter for hearing on July 18, 2016. Fortuna, pro se, requested a continuance on July 15, and the court rescheduled the hearing for August 15. Thereafter, Fortuna obtained counsel who filed a motion to dismiss the action,

arguing that despite its caption, Wolter's complaint was a complaint to establish paternity, and that the court lacked jurisdiction because the child was neither domiciled nor found in Nebraska.

After holding a hearing, the district court denied the motion to dismiss, finding that it had jurisdiction over the matter, and ordered Fortuna to return the child to Nebraska within 30 days. On September 22, 2016, Wolter filed a motion for temporary custody in which he alleged that Fortuna had not returned to Nebraska as previously ordered. In an order dated September 26, the court awarded temporary custody of the child to Fortuna, who had returned to Nebraska, and granted Wolter parenting time with the child a minimum of every other Saturday from 9 a.m. until 6 p.m.

In October 2016, Fortuna filed several motions, including a motion to decline jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), motion for temporary child support, motion for temporary removal of the child, motion to transfer the action from Cass County to Lancaster County, and motion to excuse some of the requirements of Nebraska's Parenting Act. The district court for Cass County granted the motion to transfer and awarded temporary child support, to be paid by Wolter, in the amount of $389 per month. The court reserved ruling on the remaining motions pending transfer of the action. Thereafter, the district court for Lancaster County considered the outstanding motions and denied each of them.

Trial on the issues of paternity, custody, parenting time, and child support was held on November 1, 2017. At the outset, the parties stipulated as to Wolter's paternity of the child.

Fortuna testified that she moved to Florida in March 2016, and that at the time, her mother had lived there for approximately 1 year. Fortuna did not work while living in Florida and planned to stay home with the child for the first year of his life while living with her mother. She did receive government assistance in the form of "SNAP" and Medicaid while

in Florida. At the time of trial, Fortuna had moved back to Nebraska. She was again living with her mother, who had also returned to Nebraska and intended to remain here.

Fortuna proposed a parenting plan in which Wolter would receive parenting time every other Saturday for 8 hours per day. In her opinion, the child was too young for overnight visits. She also explained that Wolter does not listen to her when she tries to provide him with information regarding the child and has missed several of his scheduled visits. She acknowledged that there have been times that Wolter has asked for additional time with the child, but she refused to give him that time because it was not his designated parenting time.

Fortuna expressed additional concerns that "[a]bout half the time" when the child would return from Wolter, he would be "a little dehydrated and hungry," and that Wolter did not pay enough attention to the child during his parenting time. She was also concerned about the condition of Wolter's residence because it has "a bunch of holes in the walls," "it leaks," and it has "moldy" walls in the laundry room. Ultimately, she believed that her proposed parenting plan was in the best interests of the child. Because of the child's young age and the fact that Wolter did not exercise his time with the child regularly, she believed it was in the child's best interests "to stay mostly with [her]."

Wolter also testified and admitted that he missed some of his scheduled visits. He explained that at that time, he was working as the general manager of a chain of gas stations, and that at times, he would unexpectedly have to cover shifts for employees who did not show up for work, causing him to miss some of his Saturday visits. He testified that he has since left that employment, in part because it was interfering with his time with his child.

Wolter's live-in girlfriend testified at trial that she has been present during his parenting time and has no concerns about his ability to parent. She explained that the child is close with Wolter and is happy while at Wolter's house. She has

observed Wolter tend to the child's needs, such as making him food and changing his diapers.

Wolter proposed a parenting plan in which he would initially receive parenting time every other week from Thursday evening through Monday morning, and beginning January 1, 2018, the parties would begin a "one week on, one week off" arrangement. He opined that this plan was in the child's best interests, because it would allow him to be part of his child's life and because the parenting time he received under the temporary order, which amounted to 18 hours per month, was insufficient to allow him to be a father to his child.

On February 14, 2018, the court entered an order finding that venue was proper and that it had jurisdiction over the parties and the subject matter of the proceeding. The court determined that Wolter was the father of the minor child. Legal and physical custody of the child was awarded to Fortuna subject to Wolter's parenting time set out in an attached parenting plan. The parenting plan awarded Wolter parenting time for every other week from Thursday evening through Monday morning, certain holidays, and two 2-week periods in the summer. Wolter was ordered to pay child support in the amount of $533 per month, and each party was ordered to pay his or her own attorney fees.

The following month, the court entered an order which reads, "The Court finds that the Parenting Plan filed February 14, 2018 and the Order filed February 14, 2018 are filed as separate filings in this matter. The Parenting Plan should be filed as an attachment to the Order." Fortuna timely appeals to this court.

## ASSIGNMENTS OF ERROR

Fortuna assigns, renumbered and restated, that the district court (1) erred in finding that it had jurisdiction to make an initial custody determination; (2) abused its discretion in denying her motion to decline jurisdiction, because Florida was a more appropriate forum; (3) lacked authority to set a

temporary hearing to be held on July 18, 2016; (4) lacked authority to order her to move herself and the child back to Nebraska and to thereafter reside in Nebraska as a condition of her having custody of the child and lacked authority to award visitation to Wolter; (5) abused its discretion in not excusing Fortuna's compliance with the Parenting Act requirements; (6) abused its discretion in not adopting her proposed parenting plan; and (7) abused its discretion in failing to order Wolter to pay her attorney fees.

## ANALYSIS

*Subject Matter Jurisdiction.*

Fortuna argues that the district court erred in concluding it had jurisdiction to make an initial child custody determination and that as a result, its custody order is void. We disagree.

[1] Fortuna claims that despite the fact that Wolter's initial pleading was captioned as a complaint for custody, the pleading was in reality a complaint to establish paternity of the child. She correctly notes that a proceeding to establish the paternity of a child may be instituted in the court of the district where the child is domiciled or found, subject to an exception not present here. See Neb. Rev. Stat. § 43-1411 (Reissue 2016). Domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or site or by the present intention to make a location or site the person's permanent or fixed home. *Metzler v. Metzler*, 25 Neb. App. 757, 913 N.W.2d 733 (2018). It is undisputed that at the time the complaint was filed, the child was domiciled in Florida.

[2] On the other hand, jurisdiction over a child custody proceeding is governed exclusively by the UCCJEA. *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018). The question then becomes whether the instant matter constitutes a proceeding to establish the paternity of a child or a child custody proceeding.

An action for paternity or parental support under Neb. Rev. Stat. §§ 43-1401 to 43-1418 (Reissue 2016 & Cum. Supp.

2018) may be initiated by filing a complaint with the clerk of the district court as provided in Neb. Rev. Stat. § 25-2740 (Cum. Supp. 2018). § 43-1411.01(1). Section 25-2740(1)(b) provides that "[p]aternity or custody determinations means proceedings to establish the paternity of a child under sections 43-1411 to 43-1418 or proceedings to determine custody of a child under section 42-364." Thus, the law distinguishes paternity actions from custody actions.

[3] Similarly, "[c]hild custody proceeding" is defined under Neb. Rev. Stat. § 43-1227(4) (Reissue 2016) of the UCCJEA as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." The term "[c]hild custody proceeding" includes a proceeding for paternity in which the issue of custody or visitation may appear. *Id*.

From the foregoing, we deduce that if the proceeding is solely to establish the paternity of a child or seeks parental support, § 43-1411 applies, and the proceeding is to be instituted in the court of the district where the child is domiciled or found. But when the custody and/or visitation of a child is also at issue, even if the action is a paternity action, jurisdiction over the proceeding is governed exclusively by the UCCJEA.

Accordingly, the present case is governed by the UCCJEA, not § 43-1411, even though Wolter sought to establish his paternity, because he was also seeking an order regarding custody and visitation. We observe that there have been two previous cases in which this court has determined that Nebraska has jurisdiction under the UCCJEA over actions where a putative father filed a complaint seeking to establish paternity and custody of a child located outside of Nebraska at the time the complaint was filed. See, *Shandera v. Schultz*, 23 Neb. App. 521, 876 N.W.2d 667 (2016); *Zimmerman v. Biggs*, 22 Neb. App. 119, 848 N.W.2d 653 (2014).

[4,5] Having decided that the UCCJEA applies, we must now determine whether the district court properly found that it had jurisdiction over the proceeding. In considering whether

jurisdiction exists under the UCCJEA, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court. *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018). Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *Id.*

Jurisdiction to make an initial child custody determination is governed by Neb. Rev. Stat. § 43-1238 (Reissue 2016) of the UCCJEA, which provides in part:

(a) Except as otherwise provided in section 43-1241 [regarding temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 43-1244 or 43-1245, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (a)(2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the

more appropriate forum to determine the custody of the child under section 43-1244 or 43-1245; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

[6] For a state to exercise jurisdiction over a child custody dispute, it must either be the home state as defined by the UCCJEA or fall under limited exceptions to the home state requirement specified by the UCCJEA. *In re Guardianship of S.T., supra*. Generally speaking, § 43-1238(a)(1) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jurisdiction, even if it is not in the child's home state. *In re Guardianship of S.T., supra*.

The UCCJEA defines "[h]ome state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 43-1227(7). As used in the UCCJEA, "[c]ommencement" of a proceeding means "the filing of the first pleading in a proceeding." § 43-1227(5).

In the present case, Nebraska was not the child's home state because the child had not lived in Nebraska for 6 consecutive months. Therefore, Nebraska did not have subject matter jurisdiction over the proceeding under § 43-1238(a)(1).

[7] However, a Nebraska court has jurisdiction to make an initial child custody determination under § 43-1238(a)(4) of the UCCJEA if "no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of [§ 43-1238]." See *DeLima v. Tsevi*, 301 Neb. 933, 921 N.W.2d 89 (2018). This has been referred to as "last resort" jurisdiction. See *id*.

Jurisdiction under § 43-1238(a)(4) here depends on whether a Florida court would have had jurisdiction to make an initial child custody determination under the criteria set forth in either subsection (a)(1), (a)(2), or (a)(3). See *DeLima v. Tsevi, supra*. As with Nebraska, Florida would not qualify as the child's home state under § 43-1238(a)(1) because the child had not lived in Florida for at least 6 consecutive months before the action was commenced.

With respect to § 43-1238(a)(2), Florida would have jurisdiction under this subsection if no court has jurisdiction as the child's home state and the following are true:

> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

This basis for jurisdiction under the UCCJEA is commonly referred to as "significant connection" jurisdiction. *DeLima v. Tsevi, supra*.

When tasked with deciding whether an individual has a significant connection to a state for purposes of this section of the UCCJEA, courts consider a wide variety of ties to the state. *DeLima v. Tsevi, supra*. Relying upon cases from other jurisdictions, the Nebraska Supreme Court in *DeLima* iterated that some factors that have been weighed in these cases are the child's relationship with extended or blended family members; enrollment in school or day care; participation in social activities; access to medical, dental, or psychological care; the availability of government assistance; or the parent's employment or family ties.

In *DeLima v. Tsevi, supra*, the Supreme Court concluded that the child and his mother had a significant connection to the nation of Togo because the child resided with family members in the country continuously for 6 years and attended

school and received medical attention there. In addition, the mother was married in Togo, had family living there, and voluntarily sent the child to live in Togo with his maternal grandmother while the mother remained in Nebraska.

To the contrary here, Fortuna and the child had lived in Florida for fewer than 4 months at the time this proceeding was commenced. Fortuna was not working in Florida or looking for employment, but she did receive government assistance in the form of "SNAP" and Medicaid. Fortuna testified that she found a pediatrician in Florida for the child, but it is unclear whether the child received any medical care there, and the child did not attend daycare. Fortuna and the child lived with Fortuna's mother, but at the time Fortuna moved to Florida, her mother had lived in the state for only 1 year. There was no evidence that Fortuna had any other family members living in Florida. On the other hand, Fortuna has siblings that live in Nebraska, and her mother moved back to Nebraska in October 2017. Based on the foregoing, we conclude that Fortuna and the child did not have a significant connection with Florida at the time the action was commenced, and therefore, Florida would not have had jurisdiction to make an initial child custody determination under § 43-1238(a)(2).

Finally, § 43-1238(a)(3) provides for jurisdiction when all courts having jurisdiction under subsection (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum. There is no evidence that any courts in the present case have declined to exercise jurisdiction on the ground that Florida is the more appropriate forum. Accordingly, a court in Florida could not have exercised jurisdiction under § 43-1238(a)(3). Because Florida would not have jurisdiction over this matter under the criteria specified in subsections (a)(1), (a)(2), or (a)(3), Nebraska has "last resort" jurisdiction under § 43-1238(a)(4). As a result, the district court did not err in concluding that it had jurisdiction over the proceedings and entering a custody order after trial.

*Inconvenient Forum.*

Fortuna next asserts that even if the district court had jurisdiction to make an initial child custody determination, the court should have declined jurisdiction because Florida was a more appropriate forum. We find no merit to this argument.

[8] A court of this state which has jurisdiction under Neb. Rev. Stat. § 43-1244(a) (Reissue 2016) of the UCCJEA to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. As a general rule, a decision to decline to exercise jurisdiction under the UCCJEA for the reason of an inconvenient forum is entrusted to the discretion of the trial court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006).

Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. § 43-1244(b). For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

§ 43-1244(b).

The evidence in the present case reveals that at the time the action was commenced, the child had resided outside of Nebraska for fewer than 4 months. The court that would assume jurisdiction is located in Florida, but there was no evidence presented as to the exact distance between the courts.

There is a disparity in the financial circumstances of the parties: Wolter was working full time, and Fortuna was unemployed. At the time the hearing on this motion was held, however, Fortuna had moved back to Nebraska, and was looking for employment, and Wolter had been ordered to pay temporary child support.

The child is too young to testify, and otherwise, the evidence required to resolve the pending litigation would be presented in the form of testimony from Wolter and Fortuna, both of whom were residing in Nebraska. There was no specific evidence as to the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence or the familiarity of the court of each state with the facts and issues in the pending litigation.

Before determining whether Nebraska was an inconvenient forum, the court was required to consider whether it would be appropriate for a court in Florida to exercise jurisdiction. Pursuant to § 43-1244(b), the court held an evidentiary hearing on the issue. Based on the foregoing evidence that was presented at that hearing, we conclude that the district court did not abuse its discretion in concluding that Florida would not be an appropriate forum and accordingly denying Fortuna's motion to decline jurisdiction.

*Authority to Schedule Temporary Hearing.*

Fortuna asserts that the district court erred in entering an order setting the matter for a temporary hearing on July 18, 2016, because this was a paternity action and paternity had

not yet been established. Even assuming without deciding that the court's order was an abuse of discretion, we cannot afford relief to Fortuna from the temporary order. See, *State ex rel. Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004); *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009).

[9] A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Coleman v. Kahler, supra.* The issue of whether the district court erred in scheduling a temporary hearing and thereafter entering a temporary order was relevant only from the time the order was entered until it was replaced by the final order after trial. Therefore, any issue relating to the temporary order is moot and need not be resolved in this appeal. See *id.*

*Authority to Order Return to Nebraska
and Award Visitation.*

Fortuna challenges the court's authority to order her to return the child to Nebraska in the August 22, 2016, order and to award Wolter visitation with the child in the September 26 order. We note, however, that Fortuna did not raise these issues before the district court.

[10] An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016). After reviewing the transcript in the instant case, we observe that Fortuna referenced her belief that the district court lacked the authority to order her to return to Nebraska, but she never placed the issue before the district court in the form of a motion for the court's consideration and ruling. To the extent Fortuna relies upon her belief that the district court lacked jurisdiction to enter either order, we have resolved that issue. Because the arguments Fortuna asserts on appeal were not presented to the district court, we do not consider them on appeal.

*Compliance With Parenting*
*Act Requirements.*

Fortuna contends that the district court abused its discretion in not excusing her compliance with the Parenting Act requirements of mediation and a parenting education course. We find these issues to be moot.

Fortuna filed a motion asking the district court to waive the parties' participation in mediation pursuant to Neb. Rev. Stat. § 43-2937(4) (Reissue 2016). The court denied the motion, and at trial, Wolter testified that the parties had attempted mediation but were unsuccessful.

[11] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018). Because the parties attended mediation and ultimately a trial on the issues was held, the issue of whether the court should have waived the mediation requirement is moot.

Likewise, Fortuna requested that the court, under Neb. Rev. Stat. § 43-2928(1) (Reissue 2016), excuse her participation in the required parenting education course. The motion was denied, and as noted above, trial was held. Rules of Dist. Ct. of Third Jud. Dist. 3-9(B) (rev. 1995) provides that the court may not schedule a hearing on a motion to set the case for trial until the parties have completed the statutorily required parenting classes. Because the court declined to excuse participation in the parenting classes and trial was held, we infer that Fortuna completed the required course prior to trial. As a result, this issue is also moot.

*Parenting Plan.*

Fortuna claims that the court should have adopted the parenting plan she proposed because it was in the child's best interests. We find no abuse of discretion in the parenting plan adopted by the district court.

[12] Child custody determinations, and parenting time determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

[13-16] The trial court has discretion to set a reasonable parenting time schedule. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of reasonableness of a parenting plan is to be made on a case-by-case basis. *Id*. Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id*.

In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the following:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member . . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016). See, also, *State on behalf of Slingsby v. Slingsby*, 25 Neb. App. 239, 903 N.W.2d 491 (2017).

Fortuna testified at trial as to her concerns regarding Wolter's ability to parent the child, including the fact that he canceled several visits, the condition of his residence, and her perception that he was unable to care for a young child. She believed that the child was too young for overnight visits with Wolter.

Wolter admitted to canceling some of his parenting time, but explained that he had to do so because of employment issues and that he has since left that job in part because it was interfering with his parenting time. He opined that his proposed parenting plan was in the best interests of the child because it would allow him to be part of the child's life.

[17] Essentially, Fortuna did not believe that overnight visits were in the child's best interests, but Wolter did. In fact, the parenting plan proposed by Fortuna afforded Wolter less parenting time than he was receiving under the temporary order. She proposed that he receive parenting time for every other Saturday from 10 a.m. until 6 p.m. and certain holidays, but no overnight visits. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018).

Here, in adopting a parenting plan almost identical to Wolter's proposed plan and affording him overnight visits, the district court apparently found Wolter's testimony more credible. We give weight to the district court's assessment of the evidence presented.

We understand Fortuna's position given the young age of the child and the relatively little amount of time Wolter has spent with the child during his lifetime. However, parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. See *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). Fortuna's proposed plan granting Wolter just 16 hours of

parenting time per month with the child does little to continue and foster Wolter's relationship with the child. We therefore cannot find that the court abused its discretion in declining to adopt Fortuna's proposed parenting plan.

*Attorney Fees.*

Fortuna argues that the district court erred in denying her request for attorney fees. We find no merit to this argument.

[18] An award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *Jessen v. Line*, 16 Neb. App. 197, 742 N.W.2d 30 (2007).

[19,20] As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009). Attorney fees and costs are statutorily allowed in paternity and child support cases. *Id*. See Neb. Rev. Stat. § 43-1412(3) (Reissue 2016).

[21,22] Further, under Neb. Rev. Stat. § 43-1259(a) (Reissue 2016) of the UCCJEA, the court shall award the prevailing party attorney fees unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate. *Coleman v. Kahler, supra*. Customarily, attorney fees and costs are awarded only to the prevailing party or assessed against those who file frivolous suits. *Id.*

Here, Fortuna sought an award of attorney fees from Wolter, but it was Wolter who was the prevailing party. His paternity of the child was established, and despite Fortuna's objection to overnight visits, the court granted Wolter parenting time every other weekend from Thursday evening until Monday morning, as Wolter requested, and awarded him parenting time for certain holidays and two 2-week periods in the summer. The court also adopted his proposed child support calculations. In

addition, despite Fortuna's repeated attempts, the court properly found that it had jurisdiction over the matter under the UCCJEA. Accordingly, the court did not abuse its discretion in declining to award attorney fees to Fortuna.

## CONCLUSION

We find no merit to the arguments raised on appeal and therefore affirm the order of the district court.

Affirmed.