IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SCROGGINS V. MOSBRUCKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SKYLER L. SCROGGINS, APPELLANT,

V.

MELISSA K. MOSBRUCKER, APPELLEE.

Filed March 21, 2023.    No. A-22-282.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

George T. Babcock, of Law Offices of Evelyn N. Babcock, for appellant.

Joan Watke, of Watke, Polk & Sena, L.L.O., for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

Skyler L. Scroggins filed an action in the district court for Douglas County to establish paternity, custody, parenting time, and child support. A few months after the commencement of the proceedings, the child moved with her mother, Melissa K. Mosbrucker, to Washington and then to Idaho where she has remained. After an evidentiary hearing the court found that while it had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Nebraska was an inconvenient forum and Idaho was a more appropriate forum. The court later dismissed the case on its own motion after Mosbrucker produced evidence that she had filed an adoption petition in Idaho. Because we find no abuse of discretion in the district court's determination that Nebraska was an inconvenient forum and its dismissal of Scroggins' complaint, we affirm.

- 1 -

STATEMENT OF FACTS

Mosbrucker gave birth to a child in July 2016 in Missouri. Mosbrucker lived in Nebraska with the child from August 2016 until July 2019 when the child moved with Mosbrucker and Mosbrucker's husband to Washington for the husband's professional advancement. The child, Mosbrucker, and Mosbrucker's husband then moved to Idaho in February 2020 for a job opportunity for Mosbrucker. The child has since remained in Idaho.

Both parties concede through various pleadings that Scroggins is the biological father of the child. However, the district court did not make a determination regarding the relief sought in Scroggins' complaint. Much of the procedural history of the present case involves Scroggins' multiple attempts to serve Mosbrucker with his complaint and whether the district court had jurisdiction under the UCCJEA.

*Initial Complaint and Service Attempts.*

On April 18, 2019, Scroggins filed a complaint for paternity, custody, parenting time, and child support. Scroggins alleged that Mosbrucker had filed a petition for adoption in April 2018 in Douglas County Court where she had made "judicial admissions" that Scroggins was the biological father of their minor daughter. Mosbrucker's petition sought an adoption of the child by her husband and was later dismissed. In his complaint, Scroggins requested that the district court order genetic testing for the purpose of establishing paternity, make a finding of paternity, grant Scroggins custody, and make a child support determination. Scroggins also sought that the matter be heard by the same Douglas County Court judge who had been assigned Mosbrucker's adoption petition.

On April 30, 2019, the district court entered an order denying Scroggins' request that the particular county court judge be appointed to hear his complaint. The district court further found that the matter was to remain under the jurisdiction of the Douglas County District Court.

On July 10, 2019, Scroggins filed a praecipe for personal service on Mosbrucker at the address of an apartment in Omaha, Nebraska. A service record filed on July 17 reflects three unsuccessful attempts to serve Mosbrucker on July 12, 16, and 17.

On August 23, 2019, Scroggins filed a motion for alternative service, noting the multiple service attempts on Mosbrucker at her Omaha address and requesting that the district court allow service by mail and by leaving a copy of the summons at Mosbrucker's address. On August 26, the district court entered an order granting Scroggins' motion for alternative service. On August 28, Scroggins filed a praecipe for alternative service in accordance with the district court's order. A proof of mailing was filed on August 30 and a service record filed on September 3 reflects that a service processor posted a copy of the summons on Mosbrucker's apartment door.

On November 27, 2019, Scroggins filed a praecipe for personal service on Mosbrucker at an Idaho address. A service record filed on January 23, 2020, reflects two unsuccessful attempts to serve Mosbrucker on December 10 and 13, 2019.

On March 3, 2020, Scroggins filed a praecipe for personal service on Mosbrucker at a Washington address. A service record filed on May 22 reflects three unsuccessful attempts to serve Mosbrucker on May 7 and twice on May 13.

On July 24, 2020, Scroggins filed a praecipe for personal service on Mosbrucker at another Idaho address. A service record filed on August 6 reflects that Mosbrucker was personally served on July 30.

On August 13, 2020, Mosbrucker filed a motion to dismiss, alleging that because service did not occur within 6 months from the filing of the complaint as required by Neb. Rev. Stat. § 25-217 (Cum. Supp. 2022), Scroggins' complaint should be dismissed. A hearing on the matter was held on September 8.

In an order entered on September 17, 2020, the district court denied Mosbrucker's motion to dismiss. The court found that Scroggins attempted service at Mosbrucker's last known address in Omaha and Mosbrucker actually resided at that address at the time of the attempted service. Scroggins then obtained appropriate substitute and constructive service. Thus, the court concluded that the alternative service was proper and timely.

*UCCJEA Jurisdiction and Forum Analysis.*

On December 3, 2020, Scroggins filed several motions including a motion for genetic testing, motion for temporary visitation and support, motion for the appointment of a guardian ad litem, and motion for an UCCJEA order finding Nebraska to be the home state of the child.

On August 4, 2021, Mosbrucker filed a motion to dismiss. The motion noted that her adoption petition was not actually dismissed until August 9, 2019, after Scroggins had filed his complaint. Because Scroggins' complaint was filed while the adoption petition was still before the county court, Mosbrucker alleged that pursuant to the Nebraska Court Rules of Pleading in Civil Cases the district court lacked subject matter jurisdiction and personal jurisdiction over the matter and the complaint should be dismissed.

Mosbrucker also alleged in her motion to dismiss that under the UCCJEA, Idaho was the home state of the child because the child had moved out of Nebraska with Mosbrucker in the summer of 2019. A hearing on the matter was held on September 7, 2021.

In an order entered on October 15, 2021, the district court denied Mosbrucker's motion to dismiss. The court found that the date of service of the initial complaint was completed on August 30, 2019; approximately 21 days after the formal dismissal of the adoption petition. Thus, while the district court may not have had subject matter jurisdiction over the child on the date the complaint was filed, the court obtained jurisdiction on the date that the adoption petition was dismissed and also had jurisdiction on the date of service. The court additionally found that Nebraska was the home state of the child under the UCCJEA at the time the adoption petition was dismissed, as the child had only been removed from Nebraska for a total of 19 days prior to the date of service. However, the court also noted that the child had been absent from Nebraska for over 2 years and there could exist the question as to whether or not Nebraska was an inconvenient forum under the UCCJEA or is still the home state.

On October 28, 2021, Mosbrucker filed a motion regarding the UCCJEA which requested that the district court find Nebraska to be an inconvenient forum, and alleged that Idaho was the home state of the child. An evidentiary hearing on the matter was held on February 9, 2022. Both Mosbrucker and Scroggins provided testimony which will be referenced as necessary in our analysis.

In an order filed on March 3, 2022, the district court first found that when Scroggins' initial complaint was filed in April 2019, the child resided in the State of Nebraska. Thus for purposes of the UCCJEA, "on the date of the commencement of the proceeding," the court found Nebraska to be the home state of the child. The court then analyzed the relevant statutory factors and concluded that Nebraska was an inconvenient forum and that the State of Idaho would be a more appropriate forum. The court ordered the proceeding to be stayed on the condition that another child custody proceeding be promptly commenced within 60 days from the date of the order in the State of Idaho.

On March 23, 2022, the district court filed an order dismissing the matter on its own motion. The court noted that it had received a file stamped copy of a complaint for judgment of adoption filed by Mosbrucker in the State of Idaho. In accordance with its March 3 order, the court found that the matter was to be dismissed without prejudice.

Scroggins appeals.

## ASSIGNMENTS OF ERROR

Scroggins assigns, reordered, that the district court erred in (1) interpreting the UCCJEA to allow forum non conveniens to trump home state jurisdiction for the purposes of making an initial custody determination and finding Nebraska to be an inconvenient forum; (2) failing to apply the doctrine of jurisdictional priority; (3) refusing to require Mosbrucker's husband to testify; and (4) failing to appoint a particular Douglas County Court judge to hear the case. Scroggins also assigns that the district court committed plain error in failing to recognize him as the child's legal father as a consequence of paternity acknowledgements.

## STANDARD OF REVIEW

The question whether jurisdiction should be exercised under the Uniform Child Custody Jurisdiction and Enforcement Act is entrusted to the discretion of the trial court and is reviewed by an appellate court de novo on the record for abuse of discretion. *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018).

## ANALYSIS

*Subject Matter Jurisdiction.*

Before we address Scroggins' assignments of errors, we first determine whether the district court had jurisdiction under the UCCJEA.

Jurisdiction over a child custody proceeding is governed exclusively by the UCCJEA. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019). "Child custody proceeding" is defined under Neb. Rev. Stat. § 43-1227(4) (Reissue 2016) of the UCCJEA as a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue and includes a proceeding for paternity in which the issue of custody or visitation may appear. *Id*. The present case is governed by the UCCJEA, as Scroggins' initial complaint sought to establish paternity as well as an order regarding custody of the child. See *Wolter v. Fortuna, supra*.

Having decided that the UCCJEA applies, we must now determine whether the district court properly found that it had subject matter jurisdiction over the proceeding. In considering whether jurisdiction exists under the UCCJEA, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate

- 4 -

court to reach a conclusion independent from the trial court. *Id*. Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *Id*.

For a state to exercise jurisdiction over a child custody dispute, it must either be the home state as defined by the UCCJEA or fall under limited exceptions to the home state requirement specified by the act. *Id*. Generally speaking, § 43-1238(a)(1) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jurisdiction, even if it is not in the child's home state. The UCCJEA defines "[h]ome state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 43-1227(7). As used in the UCCJEA, "[c]ommencement" of a proceeding means "the filing of the first pleading in a proceeding." § 43-1227(5).

In the present case, Nebraska was the child's home state. Mosbrucker testified at the evidentiary hearing that the child had lived in Nebraska from August 2016 to July 2019. The first pleading in this proceeding was Scroggins' complaint for paternity, which he filed in April 2019. Because the child lived in Nebraska for well over six consecutive months before the filing of the complaint for paternity, the district court properly found that Nebraska had subject matter jurisdiction over the proceeding under § 43-1238(a)(1).

*Inconvenient Forum*.

Scroggins assigns that the district court erred by interpreting the UCCJEA as allowing forum non conveniens to trump home state jurisdiction when making an initial custody determination. Scroggins argues that because Nebraska was the child's home state at the commencement of the proceeding, the district court was under no obligation to consider whether Idaho was a more convenient forum.

A court of this state which has jurisdiction under Neb. Rev. Stat. § 43-1244(a) (Reissue 2016) of the UCCJEA to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an "inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." See § 43-1244(a). As a general rule, a decision to decline to exercise jurisdiction under the UCCJEA for the reason of an inconvenient forum is entrusted to the discretion of the trial court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). Clearly, the statute allows a court which is the home state of the child to, at any time, decline to exercise jurisdiction on the basis that it is an inconvenient forum. We reject Scroggins' argument in this regard.

Scroggins also argues that the district court erred in finding Nebraska to be an inconvenient forum. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. § 43-1244(b). For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

See § 43-1244(b).

Pursuant to § 43-1244(b), the district court held an evidentiary hearing on February 9, 2022, where both Mosbrucker and Scroggins testified. In the court's March 3 order, it made explicit findings regarding the factors considered in § 43-1244(b)(1)-(8).

Regarding the first factor, the district court found no evidence of domestic violence between the parties. Considering the second factor, the length of time the child has resided outside this state, the court noted Mosbrucker's testimony that the child was permanently removed from Nebraska in July 2019. At the time of the evidentiary hearing, the child was 5 years old and had remained outside of Nebraska for 2 years and 7 months. The court found that period to be a "significant and extensive period of time."

In considering the third factor, the distance between the court in this state and the court in the state that would assume jurisdiction, the district court observed that Scroggins had never himself resided in Nebraska. The court noted that the distance between Missouri, where Scroggins resides, and Nebraska as compared to Missouri and Idaho is greatly different. However, the court concluded that the additional distance between Missouri and Idaho was not an "insurmountable barrier" for Scroggins to be able to pursue a paternity complaint in Idaho should the case be moved.

The district court did not make any findings regarding the fourth factor, the relative financial circumstances of the parties. We note that at the evidentiary hearing Mosbrucker testified that her annual income is $76,000 and Scroggins listed his annual income as $21,600 in his poverty affidavit.

The district court determined that the fifth factor, any agreement of the parties as to which state should assume jurisdiction, was not applicable to the matter.

The district court found the sixth factor, the nature and location of the evidence required to resolve the pending litigation, to be a factor of "great weight . . ." The court observed that should a custody trial be held in Nebraska, there would exist no witnesses or other evidence relevant in making a custody determination within the state. According to the court, the witnesses relevant to a custody determination would include current teachers, medical providers, Mosbrucker's family, friends, and colleagues who reside in Idaho, the child's friends and the parents of those friends, and to some degree the child herself. Further, the court noted that all evidence pertaining to the child's daily life, including her activities and routines, would all be within the State of Idaho.

Mosbrucker testified that she is married and through her marriage has two additional children who are younger than the child at issue in this case. The district court found that Mosbrucker's husband's employment information within the State of Idaho as well as evidence concerning the relationships between the child and her two younger half-siblings would be relevant to a custody determination. Again, this evidence would be within the State of Idaho.

Neither Mosbrucker nor Scroggins have any family residing in Omaha, Nebraska. Mosbrucker did briefly testify that her husband's family resides in Nebraska, but did not state whether her in-laws have any significant involvement in the child's life.

The seventh factor considered by the district court was the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence. The court found that due to all relevant evidence existing in Idaho, a court in the State of Idaho would more expeditiously handle the custody matter, which would benefit the child. The court also noted that it was given no evidence regarding any procedural distinctions between the Nebraska and Idaho courts regarding the presentation of evidence at trial.

The district court found the eighth and final factor, the familiarity of the court of each state with the facts and issues in the pending litigation, related directly to the sixth factor discussed above. The court found that the Idaho courts would be more familiar with the environment the child has been raised in for the past several years.

Based on the foregoing evidence that was presented at the evidentiary hearing, we conclude that the district court did not abuse its discretion in concluding that Nebraska is an inconvenient forum and that the State of Idaho is a more appropriate forum. The court properly considered the relevant factors under § 43-1244(b).

Scroggins also argues that the Idaho adoption petition filed by Mosbrucker is not a custody proceeding under the UCCJEA. Scroggins correctly notes that Neb. Rev. Stat. § 43-1228 (Reissue 2016), states that the UCCJEA "does not govern an adoption proceeding. . ."

However, Scroggins concedes that Mosbrucker's petition also requests that the Idaho court terminate Scroggins' parental rights to the child. Section 43-1227 states that a child custody proceeding under the UCCJEA includes, "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, *termination of parental rights*, and protection from domestic violence," in which the issues of legal custody, physical custody, or visitation with respect to a child is an issue. See § 43-1227 (emphasis added). The termination of Scroggins' parental rights would directly implicate his ability to seek custody or visitation of the child. Thus, we find the relief requested in Mosbrucker's adoption petition incorporates a child custody proceeding under the UCCJEA. This assignment of error fails.

*Doctrine of Jurisdictional Priority.*

Scroggins next assigns that the district court erred in failing to apply the doctrine of jurisdictional priority. Scroggins argues that the district court "surrendered its priority jurisdiction for the adjudication of custody to an Idaho court for the adjudication of an adoption." Brief for appellant at 31.

Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court. *Brinkman v. Brinkman*, 302 Neb. 315, 923 N.W.2d 380 (2019). In *Brinkman*, the Nebraska Supreme Court determined that the county court had jurisdictional priority over the probate matter at issue, as opposed to the district court in a declaratory judgment action concerning the same issue. Thus, this doctrine was applied to two courts in the same state and did not involve a jurisdictional question between two states.

Scroggins cites to *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016) for the proposition that the doctrine of jurisdictional priority should apply to cases under the UCCJEA. We disagree. In *Jesse B.*, the Nebraska Supreme Court did not address the UCCJEA. Rather, it determined that the district court erred in failing to give full faith and credit to Ohio's determination of the appellant's paternity, as required by Neb. Rev. Stat. § 43-1406 (Reissue 2016). The court further found that the district court had exclusive jurisdiction over the appellant's constitutional challenges to Nebraska's adoption statutes under the jurisdictional priority doctrine, rather than the county court in the adoption proceeding, since the district court was the first court to exercise jurisdiction. The case therefore contemplated the doctrine of jurisdictional priority between two courts of the same state rather than two courts of different states.

Moreover, a review of our appellate case law reveals no cases where the doctrine of jurisdictional priority has been applied to the UCCJEA. As such, the district court did not err in failing to apply the doctrine of jurisdictional priority. This assignment of error fails.

*Lack of Testimony by Mosbrucker's Husband.*

Scroggins assigns that the district court erred in refusing to require Mosbrucker's husband to testify at the evidentiary hearing although he was present in the courtroom.

At the start of the evidentiary hearing, Scroggins indicated that he planned to call both Mosbrucker's husband and the husband's father, who were present at the hearing, as witnesses. Mosbrucker responded that both men had not been subpoenaed and so should be free to leave the hearing. Scroggins then asked the district court for an order directing the men to remain in the building so that they could be called as witnesses. The district court responded, "I don't have a subpoena, so I'm not going to order them to stay here. If they desire to leave, I guess that's up to them if that's how we want to do this."

Pursuant to Neb. Rev. Stat. § 27-103(1)(b) (Reissue 2016), Neb. Evid. R. 103(1)(b), error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). So, to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. *Id*. The offer need not be a detailed recitation of the excluded testimony, but simply enough to provide the general nature of the testimony so that an appellate court can properly review its effect. *Birkel v. Hassebrook Farm Serv.*, 219 Neb. 286, 363 N.W.2d 148 (1985).

During the evidentiary hearing, Scroggins made no offer of proof concerning the proposed testimony to be elicited from Mosbrucker's husband. Though Scroggins now argues that Mosbrucker's husband was a critical witness, on the record presented on appeal, we are unable to ascertain why Scroggins wanted to call the husband, what testimony he could possibly have provided concerning the child, or how not being allowed to call him could have prejudiced Scroggins' complaint. This assignment of error fails.

*Denying Appointment of County Court Judge.*

Scroggins assigns that the district court erred by refusing to appoint a particular Douglas County Court judge who had previously heard Mosbrucker's April 2018 petition for adoption. Scroggins' 2019 complaint for paternity specifically requested the judge be assigned to the case.

Scroggins relies on Neb. Rev. Stat. § 25-2740 (Reissue 2016), which provides in part:

(2) Except as provided in subsection (3) of this section, in domestic relations matters, a party shall file his or her petition or complaint and all other court filings with the clerk of the district court. The party shall state in the petition or complaint whether such party requests that the proceeding be heard by a county court judge or by a district court judge. If the party requests the case be heard by a county court judge, the county court judge assigned to hear cases in the county in which the matter is filed at the time of the hearing is deemed appointed by the district court and the consent of the county court judge is not required. Such proceeding is considered a district court proceeding, even if heard by a county court judge, and an order or judgment of the county court in a domestic relations matter has the force and effect of a district court judgment. The testimony in a domestic relations matter heard before a county court judge shall be preserved as provided in section 25-2732.

(3) In addition to the jurisdiction provided for paternity or custody determinations under subsection (2) of this section, a county court or separate juvenile court which already has jurisdiction over the child whose paternity or custody is to be determined has jurisdiction over such paternity or custody determination.

Scroggins argues that because Mosbrucker's adoption petition concerning the child was already pending before the county court at the time he filed his paternity complaint, the county court judge who presided over the adoption proceedings should have heard his custody action under § 25-2740. However, the statute does not allow a litigant to request a particular county court judge as Mosbrucker did here. Thus, the district court did not err in denying Scroggins' request that a particular Douglas County Court judge be assigned to the case. This assignment of error fails.

*Recognition as Legal Father.*

Finally, Scroggins assigns that the district court committed plain error in failing to recognize him as the child's legal father as a consequence of an acknowledgement. Scroggins asserts that his April 2019 verified complaint for paternity should be considered an acknowledgement of paternity, and that Mosbrucker also signed notarized acknowledgments of paternity as part of her Nebraska adoption action. He argues that these acknowledgments operate as a legal finding and he should be recognized as the child's father as a matter of law.

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

Scroggins is correct that the establishment of paternity by acknowledgment is the equivalent to the establishment of paternity by judicial proceeding. See *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011). However, the district court never reached a final determination regarding custody, parenting time, and support as the court ultimately found that Nebraska was

not a convenient forum for these proceedings and declined to exercise its jurisdiction. Scroggins is able to assert that he is the child's legal father in the Idaho proceedings which have been initiated by Mosbrucker. Therefore, we find that no plain error has occurred.

CONCLUSION

We conclude that the district court did not abuse its discretion in finding Nebraska to be an inconvenient forum and in dismissing Scroggins' complaint. Having considered and rejected Scroggins' other assignments of error, the order of the district court is affirmed.

AFFIRMED.