Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/15/2019 09:08 AM CDT

Kwami M. DeLima, appellant, v.
Anicette C. Tsevi, appellee.
___ N.W.2d ___

Filed December 21, 2018.    No. S-17-1144.

1. **Child Custody: Jurisdiction: Appeal and Error.** In considering whether jurisdiction exists under the Uniform Child Custody Jurisdiction and Enforcement Act, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3. **Child Custody: Jurisdiction.** Jurisdiction over a child custody proceeding is governed by the Uniform Child Custody Jurisdiction and Enforcement Act.
4. **Child Custody: Jurisdiction: States.** For a state to have jurisdiction to make an initial child custody determination, it must either be the "home state" as defined by the Uniform Child Custody Jurisdiction and Enforcement Act or fall under the limited exceptions to the home state requirement specified by the act. Generally speaking, Neb. Rev. Stat. § 43-1238(a)(1) (Reissue 2016) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jurisdiction, even if it is not in the child's home state.
5. **Jurisdiction.** Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed.

Michael J. Decker for appellant.

Julie Fowler, of Fowler & Kelly Law, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Several years after the Douglas County District Court awarded custody of the child of Kwami M. DeLima (Kwami) and Anicette C. Tsevi (Anicette) to Kwami, the court determined that it did not have and never had subject matter jurisdiction to make custody determinations regarding the child and vacated all prior orders pertaining to custody or visitation. Kwami appeals. We find that the district court correctly determined that it did not have and never had subject matter jurisdiction to make custody determinations regarding the child and therefore affirm.

## BACKGROUND

In 2009, Kwami filed a complaint in Douglas County District Court seeking to dissolve his marriage with Anicette. In the complaint for dissolution, he alleged that he and Anicette were lawfully married in the nation of Togo in 1999; that the marriage had produced one minor child, C.D., born in 2003; and that C.D. had resided with C.D.'s maternal grandmother, Jeanne Akouvi, in Togo since 2006. The complaint for dissolution did not ask that either party be awarded custody of or visitation with C.D. The subsequent divorce decree, which appears to be a form document with information specific to the parties supplied in handwriting, did not award either party custody of C.D. The decree does have what appears to be a handwritten checkmark next to language indicating that "[t]he defendant is awarded reasonable visitation with the parties' minor child(ren), upon reasonable notice to the plaintiff."

Over 2 years later, in July 2011, Kwami filed an application to modify the divorce decree. He alleged that there had

been a change in circumstances since the entry of the decree, in that Anicette had "taken the parties' minor child to Togo, Africa, and has refused to return the child to [Kwami]." After a hearing on the modification application in which Anicette did not appear and was not represented by counsel, the district court issued an order in June 2012 awarding Kwami sole care, custody, and control of C.D. In its order, the court found that Anicette had taken C.D. to Togo and had refused to return the child to Kwami and that C.D. was not receiving proper medical treatment.

Several years after the decree was modified to award custody to Kwami, Anicette filed her own application to modify the custody decree. She also filed a motion to vacate the decree as it pertained to child custody. In it, she contended that the court did not have and never had subject matter jurisdiction to decide custody issues concerning C.D. The court set Anicette's application to modify the custody decree for trial. Trial was held in September 2017.

Both Kwami and Anicette testified at the trial, as did other witnesses. Both parties also introduced documentary evidence. The evidence established that, in 2006, when Kwami and Anicette were still married, they agreed to send C.D. to live with Akouvi in Togo. Both Kwami and Anicette signed a document at that time stating that they gave permission to let their son travel to Togo with Akouvi. The document also purported to grant "all and every possible legal right" concerning C.D. to Akouvi. Kwami admitted that he agreed to send C.D. to Togo to live with Akouvi in 2006.

C.D. resided with Akouvi in Togo from 2006 until September 2012. During that time, he attended private school in Togo. He also received medical attention in Togo. Anicette's younger sister, who lived with Akouvi and C.D. at the time, testified that Akouvi brought C.D. to a hospital and to monthly checkups at a medical clinic there. After C.D. had been in Togo several years, Anicette gave birth to a second child in Nebraska and, shortly thereafter, traveled to Togo with that child. Anicette

stayed for several months. When she departed, she also left the second child in the care of Akouvi.

In late 2011, Anicette moved to Togo. Less than a year later, in September 2012, she and C.D. moved to Switzerland. Anicette and C.D. have resided in Switzerland with her new husband since then. C.D. has not been in the United States since 2006.

Following the trial, the district court entered an order vacating all prior orders concerning the custody of C.D. It explained that Nebraska was not the child's home state at the time custody proceedings were initiated for the purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2016), and that, as a result, the court did not have and never had subject matter jurisdiction over custody matters. Following the denial of his motion for a new trial, Kwami timely appealed.

## ASSIGNMENT OF ERROR

Kwami assigns on appeal that the district court erred by finding it never had subject matter jurisdiction under the UCCJEA and vacating all prior custody orders on that basis.

## STANDARD OF REVIEW

[1,2] In considering whether jurisdiction exists under the UCCJEA, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court. *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018). Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *Id.*

## ANALYSIS

*General Statutory Background.*

The question before us is whether the district court ever acquired subject matter jurisdiction to determine the custody of C.D. We begin by summarizing the statutory

background governing subject matter jurisdiction of child custody determinations.

[3] We have previously said that subject matter jurisdiction over a child custody proceeding is governed exclusively by the UCCJEA. See, e.g., *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008). Our use of the word "exclusively" in this context was slightly imprecise, because there are other statutes outside the UCCJEA that confer jurisdiction to decide child custody matters. See, e.g., Neb. Rev. Stat. § 42-351 (Reissue 2016). But while other statutes may confer jurisdiction generally, § 42-351 directs courts to determine whether jurisdiction exists over a specific child custody proceeding under the UCCJEA.

Section 43-1238 of the UCCJEA sets forth the circumstances under which a court of this state has jurisdiction to make an initial child custody determination, providing as follows:

(a) Except as otherwise provided in section 43-1241 [regarding temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 43-1244 or 43-1245, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (a)(2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 43-1244 or 43-1245; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of this section.

[4] As we have previously explained in cases involving the UCCJEA, for a state to have jurisdiction to make an initial child custody determination, it must either be the "home state" as defined by the UCCJEA or fall under the limited exceptions to the home state requirement specified by the UCCJEA. See *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018). Generally speaking, § 43-1238(a)(1) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jurisdiction, even if it is not in the child's home state. *In re Guardianship of S.T., supra*.

Section 43-1238(a) grants jurisdiction to make an "initial child custody determination," which is defined elsewhere in the UCCJEA as the "first child custody determination concerning a particular child." § 43-1227(8). Another section of the UCCJEA provides that a court that has made an initial child custody determination consistent with § 43-1238 has "exclusive, continuing jurisdiction over the determination" unless the court makes certain findings. See § 43-1239.

Because the analysis required to determine whether a court has jurisdiction to make an initial child custody determination differs from the analysis required to determine whether a court can exercise its continuing jurisdiction after making an initial determination, an evaluation of jurisdiction under the UCCJEA will occasionally require a determination of when the initial

determination was made. That task is not so straightforward in this case.

One candidate for the initial determination is the 2009 divorce decree. While the decree did not award custody, there does appear to be a handwritten checkmark next to language in the decree indicating that the defendant, here Anicette, is awarded "reasonable visitation," the specific terms of which are to be determined by the plaintiff, here Kwami, acting in good faith. A decree providing for visitation concerning a child would ordinarily qualify as a child custody determination, see § 43-1227(3), but it is not clear that the checkmark on the decree was truly intended to provide for visitation in this case. The "visitation" language appears to presuppose that Kwami had been granted custody and thus was authorized to determine the extent of Anicette's "visitation," but, as we have noted, the decree did not actually address custody. Perhaps in recognition of the questionable nature of any visitation provided in the initial decree, Kwami's counsel characterized the decree at oral argument as containing "somewhat of a custody determination."

If the 2009 divorce decree did not include a child custody determination, the initial child custody determination for purposes of § 43-1238(a)(2) did not occur until the district court modified the decree to award Kwami custody in 2012. In the end, we find that it is unnecessary to determine when the initial determination was made, because we find that the district court did not have jurisdiction to make an initial child custody determination in either 2009 or 2012. We explain our reasons for this conclusion in more detail below.

*Home State Jurisdiction.*

As mentioned above, the UCCJEA generally grants jurisdiction to the child's home state. In this case, the district court did not have home state jurisdiction to make an initial child custody determination, because Nebraska was not C.D.'s home state.

The UCCJEA defines home state as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 43-1227(7). As even Kwami concedes, the fact that C.D. was living in Togo beginning in 2006 precludes any possibility of a Nebraska court obtaining jurisdiction on the basis of home state status.

*"Last Resort" Jurisdiction.*

Rather than relying on § 43-1238(a)(1), Kwami argues that the court had jurisdiction to make an initial determination under § 43-1238(a)(4), a basis for jurisdiction not explicitly considered by the district court. A Nebraska court has jurisdiction to make an initial child custody determination under § 43-1238(a)(4) if "no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of [§ 43-1238]." This is referred to by one court as "last resort" jurisdiction. See *Madrone v. Madrone*, 290 P.3d 478 (Colo. 2012).

Viewed on the surface, this argument might appear to have merit, because Kwami is correct that the record discloses no other state in the United States that might have jurisdiction. Left unmentioned by Kwami, however, is the fact that the UCCJEA provides that foreign countries like Togo are to be treated as if they were states of the United States unless their child custody law violates "fundamental principles of human rights." See, *Carter v. Carter*, 276 Neb. 840, 846, 758 N.W.2d 1, 7 (2008); § 43-1230(a) through (c). Because there is no suggestion that the child custody law of Togo violates fundamental human rights, jurisdiction under § 43-1238(a)(4) depends on whether a court of Togo would have had jurisdiction to make an initial child custody determination under the criteria set forth in either subdivision (a)(1), (a)(2), or (a)(3). If a court of Togo would have had such jurisdiction, it cannot be said no court of any other "state" would have jurisdiction, and therefore the district court would not have last resort

jurisdiction. See, e.g., *Gerhauser v. Van Bourgondien*, 238 N.C. App. 275, 767 S.E.2d 378 (2014) (holding that because courts in Utah or Florida would have had jurisdiction to make initial child custody determination, North Carolina court could not exercise jurisdiction under North Carolina version of § 43-1238(a)(4)).

Before proceeding to consider whether a court of Togo would have jurisdiction to make an initial determination of custody, we pause to clarify the precise nature of our inquiry. For multiple reasons, we will not explore the laws of Togo to decide whether it would have been permissible for a court in that country to make a child custody determination under the circumstances in this case. First, as a general matter, we are not authorized to take judicial notice of the laws of foreign countries and, if, as here, the law of a foreign country is not pleaded and proved like any other fact, we presume it to be the same as the law of Nebraska. See, Neb. Rev. Stat. § 25-12,105 (Reissue 2016); *Molina v. Sovereign Camp, W. O. W.*, 6 F.R.D. 385 (D. Neb. 1947); *Exstrum v. Union Casualty & Life Ins. Co.*, 167 Neb. 150, 91 N.W.2d 632 (1958).

In addition, § 43-1238(a)(4) provides for jurisdiction if "no court of any other state would have jurisdiction *under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of* [*§ 43-1238*]." (Emphasis supplied.) Section 43-1238(a)(4) thus directs us to consider whether a court of Togo would have jurisdiction *under the UCCJEA*, as opposed to requiring us to attempt to ascertain and apply the law of Togo to the extent it might differ from the UCCJEA.

We begin our analysis as to whether a court of Togo would have had jurisdiction with the question of whether Togo qualified as C.D.'s home state under § 43-1238(a)(1). As noted above, § 43-1238(a)(1) generally authorizes the exercise of jurisdiction by a court in the home state of the child. The home state of the child is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of

a child custody proceeding." § 43-1227(7). Since C.D. lived in Togo with Akouvi from 2006 to 2012, there is no question that he lived in Togo long enough for that to be his home state. Less clear, however, is whether Akouvi was a "person acting as a parent" for purposes of the UCCJEA.

Under § 43-1227(13) of the UCCJEA, a person acting as a parent is

a person, other than a parent, who:

(A) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and

(B) has been awarded legal custody by a court or claims a right to legal custody under the law of this state.

While the record indicates that Akouvi had the requisite physical custody of the child in order to qualify as a "person acting as a parent," under § 43-1227(13)(A), it is not clear that she would qualify under either of the legal custody prongs of § 43-1227(13)(B). There is no indication in the record that she was ever awarded legal custody of the child by a court or even "claim[ed] a right to legal custody."

If Akouvi did not qualify as a "person acting as a parent," a court of Togo could not exercise jurisdiction under § 43-1238(a)(1). However, we need not resolve whether the action could have been brought in Togo under § 43-1238(a)(1), because even if it could not, we find that the action could have been brought in Togo under one of the exceptions to home state jurisdiction.

As noted above, § 43-1238(a)(2) through (4) sets out the exceptions under which the court will have jurisdiction even if it is not the child's home state. Jurisdiction exists under § 43-1238(a)(2) if no court has jurisdiction as the child's home state and the following are true:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have

a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

This basis for jurisdiction under the UCCJEA is commonly referred to as "significant connection" jurisdiction. See, e.g., *Madrone v. Madrone*, 290 P.3d 478 (Colo. 2012).

Even if a court in Togo could not have exercised jurisdiction as C.D.'s home state, we find that it could have exercised significant connection jurisdiction, because all of the necessary elements were present to do so. First, assuming Togo could not have exercised jurisdiction as C.D.'s home state, no court would have home state jurisdiction. As we have explained, Nebraska did not qualify as C.D.'s home state.

Next, we find that both Anicette and C.D. had a significant connection to Togo. When tasked with deciding whether an individual has a significant connection to a state for purposes of this section of the UCCJEA, courts consider a wide variety of ties to the state.

"Some factors that have been weighed in these cases are the child's relationship with extended or blended family members, enrollment in school or day care, participation in social activities, access to medical, dental or psychological care, or the availability of government assistance. Some courts will mention the parent's employment or family ties."

*J.H. v. C.Y.*, 161 So. 3d 233, 241 (Ala. Civ. App. 2014), quoting Annot., 52 A.L.R.6th 433 (2010).

For instance, in *In re Marriage of Diaz*, 363 Ill. App. 3d 1091, 845 N.E.2d 935, 301 Ill. Dec. 70 (2006), an Illinois appellate court found that a mother and child had a significant connection to Illinois, based on the facts that the mother was married in Illinois; she and her child had periodically resided in Illinois; the mother relied upon her mother, also an Illinois resident, to care for the child; and the mother intended to

take advantage of various opportunities in Illinois. Similarly, in *Matter of Marriage of Schwartz and Battini*, 289 Or. App. 332, 410 P.3d 319 (2017), an Oregon appellate court found that a mother and a child had a significant connection to Oregon, based on the facts that the mother was from Oregon; the child was born and had a doctor there; and the child's maternal grandparents, with whom the child had spent significant time, spent half the year there. And finally, in *Breselor v. Arciniega*, 123 A.D.3d 1413, 1 N.Y.S.3d 413 (2014), a New York court found that a mother and her child had a significant connection to New York, based on the facts that the mother and child resided in New York previously, the child visited her grandparents in New York previously, and the child had relationships with her grandparents and other extended family members in New York.

Informed by the basis upon which other courts have found a significant connection, we find that both C.D. and Anicette had a significant connection to Togo. With respect to C.D., there is no doubt he had a significant connection. He resided with family members in the country continuously from 2006 to 2012 and attended school and received medical attention there. We also find that Anicette had a significant connection to Togo. She was married in Togo. And while she later moved to Nebraska, she continued to have significant connections to Togo even when she lived in Nebraska. Those connections included family living in Togo; the record indicates at least her mother and sister lived there. In addition, and perhaps most important, Anicette voluntarily sent C.D. to live in Togo with Akouvi while she remained in Nebraska. Based on all these facts, we find that Anicette had a significant connection to Togo.

Finally, it is clear from the record that substantial evidence concerning C.D.'s care, protection, training, and personal relationships was available in Togo. Indeed, given the fact that C.D. had lived in Togo from 2006 to 2012, substantial evidence on these subjects would not have been available

anywhere else. In any case, the record indicates that C.D. attended school in Togo, that he received medical attention at both a hospital and medical clinic in Togo, that he had friends in Togo, and that his primary caregiver, Akouvi, resided in Togo. On this basis, we conclude there was substantial evidence in Togo regarding C.D.'s care, protection, training, and personal relationships.

Based on the foregoing, we find that even if a court in Togo would not have had jurisdiction to make an initial custody determination under § 43-1238(a)(1), it would have had significant connection jurisdiction to make an initial child custody determination under § 43-1238(a)(2). And because a court in Togo would have had jurisdiction under § 43-1238(a)(2), the district court did not have last resort jurisdiction under § 43-1238(a)(4). See, e.g., *Gerhauser v. Van Bourgondien*, 238 N.C. App. 275, 767 S.E.2d 378 (2014).

*District Court's Order Vacating*
*All Prior Custody Orders.*

At oral argument, counsel for Kwami contended that even if a child custody proceeding could have initially been brought in Togo, the district court should not have found a lack of jurisdiction, because at the time the custody proceedings were commenced, both Kwami and Anicette lived in Nebraska and chose to litigate the issues in the district court. Counsel additionally pointed out that C.D.'s custody has been litigated in the district court for 9 years but that as a result of the district court's most recent order, it has still not been resolved.

[5] All of this appears to be true, but it does not affect whether the district court acquired subject matter jurisdiction. If a court lacks subject matter jurisdiction, it lacks the power to determine the case. See *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017). Accordingly, parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject

matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Id.*

That the parties litigated this case in the district court for some time is thus irrelevant to whether the district court had subject matter jurisdiction. The district court's authority to decide C.D.'s custody is determined by the UCCJEA, and for reasons we have explained, the UCCJEA did not give it the power to do so. When a court acts without subject matter jurisdiction, its actions are void. See *J.S. v. Grand Island Public Schools, supra.*

So while it is certainly regrettable that the significant time and energy devoted to litigating C.D.'s custody in the district court was all for naught, upon its correct determination that it never had subject matter jurisdiction, the district court had no choice but to vacate its prior custody orders. See *In re C and M Properties, L.L.C.*, 563 F.3d 1156, 1167-68 (10th Cir. 2009) (holding that action must be dismissed for lack of subject matter jurisdiction despite court's being "loathe to add to the duration and complexity of an already overlong and overly complex matter, let alone to deliver the unwelcome news that the parties have been litigating in vain in federal court for over four years based on a mistaken premise").

## CONCLUSION

Because the district court never acquired subject matter jurisdiction of the custody of C.D., any actions regarding his custody were void. The district court thus correctly vacated any orders pertaining to C.D.'s custody or visitation, and we affirm.

AFFIRMED.