Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/12/2020 09:07 AM CDT

Patrick G. Bryant, Jr., appellee, v.
Stephanie R. Bryant, appellant.

___ N.W.2d ___

Filed May 12, 2020.    No. A-19-379.

1. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

2. **Right to Counsel: Effectiveness of Counsel.** A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel.

3. **Child Custody: Jurisdiction: Appeal and Error.** In considering whether jurisdiction exists under the Uniform Child Custody Jurisdiction and Enforcement Act, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.

4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

5. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

6. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

7. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

8. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

9. ____. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court.

10. **Child Custody: Jurisdiction: States.** For a state to have jurisdiction to make an initial child custody determination, it must either be the "home state" as defined by the Uniform Child Custody Jurisdiction and Enforcement Act or fall under the limited exceptions to the home state requirement specified by the act. Generally speaking, Neb. Rev. Stat. § 43-1238(a)(1) (Reissue 2016) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jursdiction, even if it is not in the child's home state.

11. **Divorce: Child Custody.** When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests.

12. **Child Custody.** When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.

13. **Visitation.** The Parenting Act provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance, and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests.

Appeal from the District Court for Otoe County: Julie D. Smith, Judge. Affirmed.

Stephanie R. Bryant, pro se.

Abbie J. Widger and Morgan C.H. Kristensen, of Johnson, Flodman, Guenzel & Widger, for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Stephanie R. Bryant appeals from the decree of dissolution of her marriage to Patrick G. Bryant, Jr., that was entered by the district court for Otoe County. On appeal, Stephanie challenges the district court's jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and its ultimate custody determination. For the reasons that follow, we affirm the decision of the district court.

## BACKGROUND

On October 6, 2017, Patrick filed a complaint for legal separation in the district court for Otoe County. He alleged that both Stephanie and he had been residents of Nebraska since July 7, 2017, and that their children had been living with him from that date through the time of filing. Patrick further alleged that an emergency existed to warrant awarding him temporary custody of the children and that, without such an order, Stephanie would remove the children from Nebraska and "upend [their] stability." On the same date, Patrick filed motions for temporary custody and an ex parte order granting him temporary custody. He alleged that Stephanie had stated an intention to remove the children from Nebraska and had arrived at their school in Syracuse, Nebraska, expressing a desire to remove them. In his motion for temporary custody, he noted that no other custody determination enforceable under the UCCJEA had been entered in any other state. In support of his motions, Patrick filed an affidavit which detailed his reasons for seeking temporary custody. On October 10, the court entered an ex parte order granting Patrick temporary custody of the children and setting the matter for a temporary hearing.

On October 12, 2017, Stephanie filed a motion to vacate, motion to dismiss, and notice of hearing. She asserted that the district court lacked jurisdiction to make an initial child

custody determination and that Illinois was the children's home state. On November 6, the district court entered an "Order for Hearing." In the order, the court recited that it had participated in a conference call with a judge from "the Twelfth Judicial Circuit Court, Will County, Illinois," pursuant to the UCCJEA, specifically Neb. Rev. Stat. § 43-1235(c) (Reissue 2016). The district court found that a proceeding had been filed in Illinois regarding custody of the minor children. As a result, the court ordered that a hearing be held on December 5 that would be conducted jointly with the Illinois court, the purpose of which would be to determine the appropriate forum state pursuant to the UCCJEA.

On December 5, 2017, the joint hearing under the UCCJEA was held. Stephanie appeared personally in Illinois with counsel, but was also represented by counsel in Otoe County. Patrick appeared personally in Otoe County with counsel, but was also represented by counsel in Illinois. The two courtrooms were connected telephonically for the hearing.

During the hearing, both courts acknowledged that Illinois was the children's home state for purposes of the UCCJEA. The hearing proceeded on the arguments of counsel in both states. Patrick argued that the Illinois court ought to find that Illinois is an inconvenient forum and decline jurisdiction, which would allow for the matter to be heard in Nebraska. Patrick argued that the parties had been planning a move to Omaha, Nebraska, for months before it actually occurred in July 2017. Patrick was retiring from his service with the U.S. Coast Guard, and he and Stephanie had agreed to utilize the military's moving services to move to Nebraska upon Patrick's retirement. He also argued that he had traveled to Nebraska prior to the move, in search of employment and for purposes of renting or purchasing a home for the family, and that he had secured both employment and housing in Nebraska. Patrick argued that Stephanie was aware of their plans to move to Nebraska, referencing a social media posting Stephanie made, which mentioned them making a "'transition

back to Nebraska'" facilitated by movers who were "'coming on July 5th. So change is coming, ready or not.'" Patrick further argued that Illinois was an inconvenient forum because neither Stephanie nor he had any home or personal property in Illinois, both of their extended families lived in Nebraska, he had obtained employment in Nebraska, and their children had been enrolled in school in Syracuse since August 2017.

Stephanie, on the other hand, argued that there was a longstanding discussion between the parties whereby she expressed a desire not to move to Nebraska. She said that Omaha was "not a peaceful environment" and that it had "too many triggers" for her. Stephanie also alleged that Patrick had subjected her to physical domestic abuse. Additionally, Stephanie noted that the witnesses she would call at trial resided in Illinois.

The Illinois court found that it was clear for months that both parties planned to move to Nebraska and that Stephanie did not indicate an unwillingness to move "until the last minute." The court further found that there was no evidence of forum shopping or evidence that the children were removed from Illinois for any improper purpose. Accordingly, the Illinois court determined that it would grant Patrick's motion to dismiss based on inconvenient forum with the understanding that the Nebraska court would accept jurisdiction of the matter. The Nebraska court accepted jurisdiction. There is no indication in the record that any appeal was taken in Illinois from the dismissal of the case there.

Stephanie filed a motion for temporary custody on December 5, 2017. Patrick filed a similar motion for temporary custody on December 7, shortly after the UCCJEA hearing. The court heard arguments on both parties' motions on December 12. It awarded the parties temporary joint legal custody and awarded temporary physical custody to Patrick. It awarded Stephanie parenting time every Wednesday from 5 to 8 p.m. and every other weekend from 6 p.m. on Fridays to 6 p.m. on Sundays. The court also ordered Stephanie to pay temporary child support of $472 per month.

On July 12, 2018, Patrick filed an amended complaint for dissolution of marriage. On November 28, counsel for Stephanie was allowed to withdraw. Stephanie has proceeded as a self-represented litigant since that time and continues in that capacity on appeal. Trial was held on February 7 and March 7, 2019. The evidence revealed that the parties were married on November 14, 2009, while Patrick was an active duty member of the Coast Guard. At that time, the parties lived on Martha's Vineyard, Massachusetts. Their son, John B., was born in September 2010. John has had severe food allergies and recurrent eczema throughout his life. Patrick was later transferred to Manistee, Michigan, where their daughter, Cora B., was born in May 2012. The family thereafter moved to Bolingbrook, Illinois, again on account of a military transfer. Although Stephanie had previously worked in pharmaceutical sales, she described herself as being a stay-at-home "military mom" once John and Cora were born.

Patrick planned to retire from the Coast Guard in April 2017, after which the family planned to move to Omaha. Stephanie mailed a Christmas card in December 2016 that said it would be the family's last Christmas in Illinois and that they looked forward to returning to Nebraska. Patrick described the move to Nebraska, where both parties were originally from and still had family members, as a "fresh start" for them. Patrick further testified that Nebraska remained his official state of residence throughout his military career. One of Patrick's aunts testified that she attended Patrick's retirement party and discussed with Stephanie their plans to move to Nebraska. His aunt testified that Stephanie described the move as a nice opportunity for John and Cora to be closer to their cousins and other family members. Nevertheless, Patrick characterized Stephanie as having a "flavor of the week" when discussing where they would move upon his retirement, because she would mention returning to Michigan or Massachusetts alongside discussions of moving to Nebraska.

Patrick's mother, Sharon Wellenshiek, helped Patrick find a home in Omaha that the family could rent, and Patrick entered

into a lease on a suitable home. Wellenshiek said that she knew that Patrick had applied for a position with the Omaha Fire Department, and Patrick testified that he was also in talks regarding a construction job in Omaha at that time.

After postponing the move twice over the course of 3 months, Patrick arranged for military movers to be at their Illinois home on July 7, 2017. Patrick also arranged for Wellenshiek, and a friend of hers, Nancy Hauschild, to help with the move, and they arrived on July 4. Wellenshiek said that she also spoke with Stephanie before arriving at the home and described a call with her in which she was "hysterical and — and kind of yelling over the phone and crying." When Wellenshiek and Hauschild arrived at the home, they discussed with Stephanie when the movers would arrive and Wellenshiek went to work washing and folding laundry and watching after John and Cora. Meanwhile, Hauschild helped prepare meals for the family while they were packing.

Stephanie stayed at home that evening while Patrick, John, Cora, Wellenshiek, and Hauschild went to a fireworks show. When they returned, the stacks of clothing that Wellenshiek had washed and folded were strewn about the floor, and toys were strewn about the basement. Stephanie acknowledged that she had strewn the clothing and toys around the house, and she told Wellenshiek that she had wanted to do more. There were also broken picture frames and shattered glass shards in the backyard. Stephanie told Hauschild that she had thrown her wedding photographs to the ground from her bedroom balcony.

Movers and a moving truck arrived on the morning of July 7, 2017, which Hauschild described as "a very stressful morning." She testified that Stephanie's behavior became "very erratic," and Hauschild asked her whether she ought to take some of her prescribed anxiety medication. Hauschild said that Stephanie replied that she did not need to take her medication because she had "'God and prayer and purified lemon water'" instead. Stephanie also said that she was not going

to Nebraska, that Omaha had too many "'triggers,'" and that her family did not support her. Patrick testified that he went to the local police station that morning to discuss what rights he had to take John and Cora to Nebraska if Stephanie would not go along. He said that he anticipated that Stephanie would "be angry but be three hours behind [them] on the road" because that was "typical" behavior of hers. Patrick further said that he was crying and begging Stephanie to get in her car and drive with them to Nebraska. After police officers and paramedics arrived and consulted with Patrick about whether to take the children to Nebraska as planned, Patrick left in his car with the children and Hauschild for Nebraska around 5 p.m., while Stephanie remained behind. Patrick said that he felt that the children were safer with him because they were effectively homeless and without any possessions in Illinois at that time. Hauschild said that she drove while Patrick called their pastor and Stephanie's brother. Hauschild noted that Patrick was upset because he forgot to leave cash for Stephanie when they left. Instead of going to the leased home in Omaha, Patrick and the children went to Wellenshiek's home in Syracuse.

The parties spoke by telephone on July 8, 2017, at which time Stephanie maintained that she did not want to live in Nebraska. She told Patrick that she was going to drive to Syracuse, pick up John and Cora, and take them to Michigan or Massachusetts. Patrick responded that he could not let that happen to John and Cora because Stephanie had no money, no job, and no home. In August 2017, Patrick, John, and Cora moved out of Wellenshiek's home into a rental house owned by Wellenshiek. Wellenshiek helped Patrick by paying to break his lease on the Omaha home. Because the movers had delivered all of Patrick and Stephanie's possessions to the Omaha home, Patrick had them moved to an Omaha storage facility and provided a key to Stephanie. Patrick then sought employment in the Syracuse area. At the time of trial, he was working for a trucking company.

Another of Patrick's aunts testified that she sees John and Cora numerous times each week because they attend an after-school program near her work in Syracuse. She said that she took Cora to school for a period of time immediately after their move and noted that it was difficult and that at first Cora did not want to attend. She also said that Cora was "very babyish" but that both John and Cora relaxed and grew calmer and happier over time. She said that they are fun, happy, and "goofy" and that Patrick is a "normal dad" who keeps a routine for the children. Similarly, Wellenshiek testified that John and Cora were very active and getting good grades in school. She said that it was evident that they love both Patrick and Stephanie.

Patrick also described that John and Cora have seemed calmer since he separated from Stephanie. After their move to Syracuse, he placed John and Cora in counseling from which they were discharged in March 2018. He testified that John's nervous ticks of playing with his hair and picking at his skin have decreased or ceased entirely. Patrick further testified that both John and Cora do well in school, have friends and get along with others, and are involved in Sunday school, baseball, T-ball, and soccer.

Stephanie moved to Nebraska later in 2017 and primarily stayed with family members, including her mother and brother, before moving into a community shelter home for women on March 13, 2018. She testified that she was operating a poetry and photography business, from which she earned approximately $1,000 in 2018. Stephanie said, "I'm very capable of working." She was hired in the spring of 2018 to work in banquet catering, but she did not hold that job for very long. She testified that she worked as a part-time gymnastics coach for 6 to 9 hours per week, earning $13 per hour. Stephanie further testified that she had been earning $169,000 per year when she worked in pharmaceutical sales before John and Cora were born but added that was "not to say that [she] would go back into that arena." The evidence established that Stephanie did not pay her temporary child support obligation

as ordered. As of January 25, 2019, Stephanie owed overdue child support in the amount of $6,230.16.

Stephanie testified that she had exercised her right to parenting time for the most part. She said that the last overnight parenting time she had with John and Cora was on Christmas Eve 2018, which she hosted at her mother's home. Prior to that, the most recent overnight parenting time was the first weekend in November, which she hosted at her brother's home. A friend whom Stephanie met when they both lived at the community shelter home testified that she allowed Stephanie to use her apartment for an overnight visitation with John and Cora. She said that Stephanie was welcome to return to her home with the children to exercise overnight parenting time and also testified that some mothers had visitations with their children at the community shelter home. Stephanie stated that she would no longer spend overnights at her mother's, brother's, or friend's homes, however.

Patrick produced a calendar that documented when Stephanie exercised her overnight parenting time. His records indicated that she had overnight parenting time on approximately half of the possible weekends between January and October 2018. She more regularly exercised parenting time on Wednesday evenings but occasionally missed those as well, including, for example, a stretch of 3 weeks in October. Patrick noted that Stephanie sometimes rescheduled parenting time from Wednesday to Thursday. Patrick also testified that he had provided a hotel room on occasion for Stephanie to exercise parenting time with the children and had allowed Stephanie to spend hours with Cora in his home when Cora was ill. A witness who had observed Stephanie's parenting described her preparing special snacks for John to take to school on account of his allergies. Another witness, who had observed both Stephanie and Patrick with their children, testified that both of them were "loving parents."

While Patrick acknowledged that he had "bear-hugged" Stephanie "to get her to calm down" during arguments, he

denied ever hitting her. Patrick also denied various alleged acts of abuse, including pushing Stephanie against a wall during the first year of their marriage, grabbing Stephanie, throwing her onto their bed, and shaking her shortly after Cora was born. He testified that their arguments often resulted in them yelling "horrible things" at each other. He testified that Stephanie threw things at him, such as car keys, during their arguments. Stephanie testified that Patrick verbally abused her whenever she would discuss wanting to move back to Massachusetts.

Patrick acknowledged that he had been treated for alcohol abuse prior to the parties' engagement and marriage. He testified that he does not abuse alcohol presently, drinks only occasionally, and never drinks when John and Cora are in his care.

Stephanie testified that several incidents of abuse did occur during the course of the marriage. She further testified that she had been the primary caregiver for the children and was better suited to care for their needs, particularly in light of John's dietary restrictions. She testified that she was seeking to obtain more stable employment and housing, but had not secured either as of the time of trial. On cross-examination, she admitted that she had not exercised all of her court-ordered parenting time.

On March 18, 2019, the court entered its decree of dissolution. The court determined that both Stephanie and Patrick were fit parents and awarded them joint legal custody of John and Cora. The court awarded sole physical care and custody of the children to Patrick, finding that Stephanie was not presently in a position to have physical custody of the children. The court devised a parenting plan that gave Stephanie parenting time on every other weekend and on Wednesday afternoons. The court directed Stephanie to pay child support of $95 per month to Patrick. The court specifically found that domestic abuse had not been established by a preponderance of the evidence. Additionally, the court divided the parties'

property and entered additional orders, none of which have been assigned as error on appeal.

Stephanie now appeals.

## ASSIGNMENTS OF ERROR

[1,2] Across two sections both titled "Assignments of Errors," Stephanie assigns myriad errors that are inconsistently or inaccurately enumerated. Moreover, between those two sections, there is a mixture of duplicative and original errors assigned. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Diamond v. State*, 302 Neb. 892, 926 N.W.2d 71 (2019). As such, many of Stephanie's assignments of error cannot be addressed. A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015).

Upon our review, we consolidate and restate the errors that Stephanie both assigns and argues. Those alleged errors are (1) that the court should not have accepted jurisdiction of the child custody determination and (2) that the court should have awarded physical custody of John and Cora to Stephanie. While Stephanie purports to assign many more errors than the two we will review on appeal, she does not properly and specifically assign or argue those other errors, and, thus, as stated above, we will not consider them.

## STANDARD OF REVIEW

[3,4] In considering whether jurisdiction exists under the UCCJEA, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court. *DeLima v. Tsevi*, 301 Neb. 933, 921 N.W.2d 89 (2018). Statutory interpretation is

a question of law, which an appellate court resolves independently of the trial court. *Id*.

[5-7] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

*Jurisdiction.*

Stephanie first argues that the district court for Otoe County erred in accepting jurisdiction of this matter, because it had been many years since the parties last lived in Nebraska, and that the Illinois court was the appropriate venue. She alleges that the district court thereby "violated both the [UCCJEA] in collaboration with the Parental Kidnapping Prevention Act." Patrick argues in reply that Nebraska was the correct venue for this matter and that the Nebraska court therefore did not err in accepting jurisdiction of the matter. We find that the Nebraska court had jurisdiction to make an initial child custody determination in this matter.

[8] We first consider Stephanie's invocation of the "Parental Kidnapping Prevention Act." We decline to consider what, if any, effect the act has on this matter, because Stephanie raises

this issue for the first time on appeal. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

[9] We next address Stephanie's arguments that seem directed toward the Illinois court's decision not to exercise jurisdiction under the UCCJEA. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). The only decision our district court made was to accept jurisdiction of this matter after the Illinois court declined to exercise jurisdiction over the children. Any claim of error by the Illinois court would have to be appealed to the appellate courts of that state. We cannot and will not review arguments related to the Illinois court's declination to exercise jurisdiction.

[10] As we have previously explained in cases involving the UCCJEA, for a state to have jurisdiction to make an initial child custody determination, it must either be the "home state" as defined by the UCCJEA or fall under the limited exceptions to the home state requirement specified by the UCCJEA. *DeLima v. Tsevi*, 301 Neb. 933, 921 N.W.2d 89 (2018). Generally speaking, Neb. Rev. Stat. § 43-1238(a)(1) (Reissue 2016) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jurisdiction, even if it is not in the child's home state. *DeLima v. Tsevi, supra*.

Section 43-1238 of the UCCJEA sets forth the circumstances under which a court of this state has jurisdiction to make an initial child custody determination as follows:

(a) Except as otherwise provided in section 43-1241 [regarding temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding or was the home

state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 43-1244 or 43-1245, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (a)(2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 43-1244 or 43-1245; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of this section.

In the present case, the courts agreed that Illinois was the children's home state. The Illinois court declined to exercise jurisdiction, however, determining that Nebraska was the more appropriate or convenient forum. As such, this case falls directly within the scope of the exception enumerated in § 43-1238(a)(2) and (3). We note that both Stephanie and Patrick had significant connections to Nebraska, including the location of both of their extended families. Both parties lived in Nebraska as of the time of hearing. Patrick had obtained employment and was renting a home in Syracuse, and Stephanie lived at a community shelter home in Omaha. John and Cora were enrolled in Syracuse schools. Nebraska

also housed substantial evidence regarding the parents' care of John and Cora, including witnesses such as Patrick's mother and aunt and Stephanie's brother, each of whom observed the parties parenting John and Cora and witnessed the parties' relationship throughout its duration. Thus, the Nebraska court had jurisdiction under the UCCJEA to make an initial custody determination in this matter.

*Custody.*

Stephanie argues that the district court erred in awarding physical custody of John and Cora to Patrick. She contends that she offered superior care for the children, especially in light of John's allergies and eczema, as she was a stay-at-home mother. Patrick argues in reply that the district court did not err in finding that awarding him physical custody of John and Cora promoted their best interests. We affirm the district court's order with respect to custody.

[11] When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Olson v. Olson*, 27 Neb. App. 869, 937 N.W.2d 260 (2019). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id.*

[12,13] When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). See Neb. Rev. Stat. § 43-2923 (Reissue 2016). The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety,

emotional growth, health, stability, physical care, and regular school attendance, and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. *State on behalf of Kaaden S. v. Jeffery T., supra*.

The district court in this matter determined that both parents were fit and that neither Stephanie nor Patrick seriously or specifically contended that the other parent was an unfit parent. Accordingly, custody ought to be devised to advance the best interests of the children. We find that the court's award of physical custody of the children to Patrick is supported by the evidence. The evidence established that at the time of trial, Stephanie was not in a position to provide adequate care for the children. She did not have stable housing or employment. She had not provided support for the children as previously ordered by the court, and she frequently did not exercise the parenting time afforded her by the temporary order. The court's order contemplates the children's general health, welfare, social behavior, emotional growth, physical care, and regular school attendance. The evidence demonstrates that at the time of trial, Stephanie was living in a community shelter home in Omaha while Patrick was renting a single-family residence in Syracuse. The children were enrolled in school in Syracuse, where they were performing well, and they were also engaged in sports and other activities in Syracuse. The evidence also demonstrates that Patrick has put himself in a position to provide for the children's needs. Patrick is employed and has an established support network of family members in Syracuse. Based on Stephanie's testimony, she was limiting her contact with her own family members and would no longer exercise overnight parenting time in their homes. Thus, at the time of trial, awarding physical custody of John and Cora to Patrick advanced the children's best interests.

Finally, we must note that in evaluating the children's best interests, courts are also directed to consider credible evidence

of domestic abuse. The district court concluded that domestic abuse had not been proved in this case. While Stephanie offered some evidence that Patrick engaged in acts of domestic abuse, Patrick denied such allegations. He acknowledged, however, the contentious nature of the parties' relationship, which resulted in loud arguments at times. Cognizant that the district court observed the witnesses and accepted one version of the facts over the other, we conclude that the court did not abuse its discretion with respect to its finding that domestic abuse was not proved in this case.

## CONCLUSION

For the foregoing reasons, we affirm the orders of the district court which accepted jurisdiction over the child custody determination herein and which awarded physical custody of the children to Patrick.

AFFIRMED.