IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DICKERSON V. DICKERSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

HALEY L. DICKERSON, APPELLEE,

V.

CALEB L. DICKERSON, APPELLANT.

Filed February 25, 2025.    No. A-24-442.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

Benjamin Lee Bramblett for appellant.

Angela M. Minahan, of Reinsch, Slattery, Bear, Minahan & Prickett, P.C., L.L.O., for appellee.

MOORE, BISHOP, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Caleb L. Dickerson appeals from the Cass County District Court's dissolution decree awarding Haley L. Dickerson sole legal and physical custody of the parties' children. For the reasons stated herein, we affirm.

### STATEMENT OF FACTS

Caleb and Haley were married in October 2019 and had two children during their marriage: Magnolia R. Dickerson, born in 2019; and Rowdy L. Dickerson, born in 2022. The parties separated in December 2021, prior to Rowdy's birth.

In October 2022, Haley filed a complaint for dissolution of marriage alleging that the parties' marriage was irretrievably broken and requesting, among other things, that the court dissolve their marriage, award her sole legal and physical custody of their two minor children

subject to Caleb's parenting time, and award child support. Haley filed a motion for temporary orders requesting the same.

Caleb did not file an answer; however, he did file a motion requesting the court enter a temporary order awarding the parties joint legal and physical custody of the children, calculating child support, allocating out-of-pocket medical expenses, and establishing a week on/week off parenting plan.

A hearing on the motion requesting temporary orders was held in November 2022. During the hearing, the parties offered an agreed-upon parenting time schedule which provided gradual parenting time for Caleb and that the parenting time would take place at the home of Caleb's mother. Following the hearing, the district court entered a temporary order awarding Haley sole legal and physical custody of the parties' children, ordering Caleb to pay child support of $599 per month, and granting Caleb parenting time.

In February 2023, Caleb filed a motion requesting the court amend its prior temporary order to award the parties joint legal and physical custody of the children and to modify his parenting time. In its temporary order, the district court stated that it "considered the evidence and the circumstances that required the present temporary order. While different custody and parenting time arrangements may be appropriate at some future time, the Court finds that the current visitation schedule is in the best interests of the minor children at the present time."

Haley filed a motion to review the temporary order, and a hearing thereon was held in August 2023. The district court found, based upon its review of the evidence presented and the court's prior orders, that "the temporary order should be modified to prohibit [Caleb] from consuming alcohol during his parenting time."

The dissolution hearing was held in December 2023. The only issues that remained at the time of trial were child custody, parenting time, and child support. The court received numerous exhibits and heard testimony from the parties. The evidence established that after the parties' marriage, they eventually moved into a home in Weeping Water, Nebraska, with their daughter, Magnolia. Both parties testified that on at least two prior occasions, Haley left the home due to marital discord, but they reconciled each time. Thereafter, in December 2021, while pregnant with Rowdy, Haley left for the third and final time.

Haley testified that she was Magnolia's primary caregiver during the marriage and that she scheduled and attended all dental and medical appointments, cooked all the meals, prepared the baths, and completed all the laundry. Since the parties separated a month prior to Rowdy's birth, Caleb was not present for the birth and Haley has been both children's primary caregiver.

The parties testified that the breakdown in the marriage occurred in May or June 2021, shortly after Caleb's grandmother passed away. Haley testified that around that time, Caleb began displaying erratic and violent behavior which escalated over time, leading to her decision to leave. Haley testified that although she was aware that Caleb smoked marijuana during their marriage, after the parties separated, she learned that Caleb was addicted to cocaine and had begun consuming alcohol. Haley testified that following their separation, Caleb was charged with driving under the influence (DUI), a weapons charge, and violating open container laws. Haley testified that while the matter was pending, she filed a motion to review the temporary order because of concerns related to Caleb's alcohol consumption and firearms being accessible to the children. She

testified that on one occasion, she received a phone call from Caleb's friends asking for help because Caleb was intoxicated and behaving violently, and that Magnolia reported witnessing Caleb stumble and throw up on the couch. Haley further testified that after one visit, Caleb returned a diaper bag to Haley with a firearm inside. Haley testified that throughout their marriage, Caleb struggled with suicidal thoughts and mental health issues and shortly after Rowdy was born, Caleb checked himself into a recovery center and was diagnosed with anxiety and depression. Haley testified that during the marriage, in addition to substance use and mental health concerns, Caleb's behavior changes continued to escalate into violent episodes directed at her in the children's presence. She testified that Caleb's behaviors included screaming, throwing things, driving too fast, and verbal and emotional abuse. On at least one occasion, Magnolia was injured during one of Caleb's violent outbursts. Haley further testified the children have relayed to her that Caleb has made statements to them about how Haley is mean to Caleb and how Haley is not in charge or not the boss. Haley also expressed concern about the condition of Caleb's home including that it was uninsurable and should be condemned.

Caleb testified that although he previously had mental health struggles and had been prescribed medication, he was no longer under a doctor's care and was not taking any prescription medications to treat mental health concerns. Caleb testified that he did not check in at the recovery center, instead choosing to take part in an all-inclusive program through his church. Caleb acknowledged that he had been charged with an open container and a DUI in two separate incidents. Caleb testified that he underwent two chemical dependency evaluations, applied for a provisional interlock permit for his vehicle, and took on a second job. At the time of trial, Caleb was still awaiting sentencing on his DUI conviction. Caleb testified that he was sober and that he had not consumed cocaine or marijuana for approximately 2 years. Caleb denied having an alcohol addiction and stated that neither of the chemical dependency evaluations made treatment recommendations.

Caleb testified that he generally did not have any concerns relating to the parties' ability to coparent or communicate with each other. Although Caleb admitted that there had been times when he had thrown or broken things when he was upset, he claimed that Haley had engaged in similar behavior in front of the children. As it related to the safety of his home, Caleb testified that he made improvements to the home and provided proof of those improvements to Haley, but the home was not currently insured and he was unsure whether the home was still uninsurable. Caleb testified that keeps his firearms locked in a gun safe.

In May 2024, the district court entered a decree of dissolution awarding Haley sole legal and physical custody of the minor children subject to Caleb's parenting time as outlined in the court's parenting plan and found that said parenting plan was in the best interests of the minor children. Caleb has now appealed from the court's dissolution decree that determined legal and physical custody of the parties' children.

## ASSIGNMENT OF ERROR

Caleb's sole assignment of error is that the district court abused its discretion in awarding Haley sole legal and physical custody of the parties' children.

STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Taylor-Couchman v. Dewitt-Couchman*, 29 Neb. App. 950, 964 N.W.2d 320 (2021). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or its action is clearly against justice or conscience, reason, and evidence. *Id.*

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*

ANALYSIS

Caleb's sole assignment of error is that the district court abused its discretion in awarding Haley sole legal and physical custody of the parties' children. Caleb argues that the district court adopted Haley's proposed parenting plan, which was "effectively a default judgment," and which did not make any written findings and "effectively determined that [Caleb's] house was unsafe." Caleb asserts that the "default judgment also bespeaks prejudice towards [Caleb]" based on Haley's testimony that he was unfit. Brief for appellant at 9. Caleb further contends:

> The court did not note anything in the Decree to indicate those factors were considered. By entering the exact same order offered by [Haley,] it is hard to say that the findings are, "implicit" in the Decree.
>
> In summary, the Court's decision was based solely on prejudice and not on [Caleb's] fitness to parent his children.
>
> . . . .
>
> What is most prejudicial about the Court's order was the lack of any direction given because there were no written findings. The Court does not present anything [Caleb] could do to later establish a material change in circumstance to obtain more parenting time or even the ability to know where his children go to school. It is unconscionable that Court would neglect to enter an order for six months and then effectively divest a parent of their relationship with their children without providing an explanation. [Caleb] is not a batterer or a sex offender, but he is receiving less parenting time than if he were. It is egregious that a court would require someone to exercise their parenting time at their mother's house without any legitimate evidentiary justification and then neglect to provide them with steps they could take to be an active parent in their children's life.

Brief for appellant at 16-17.

The Parenting Act simply requires that all custody and parenting time arrangements be determined based on the best interests of the child. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the

child's best interests. *Bryant v. Bryant*, 28 Neb. App. 362, 943 N.W.2d 742 (2020). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id*.

When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *State on behalf of Kaaden S. v. Jeffery T., supra*; *Bryant v. Bryant, supra*. See Neb. Rev. Stat. § 43-2923 (Reissue 2016). The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance, and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. *State on behalf of Kaaden S. v. Jeffery T., supra*; *Bryant v. Bryant, supra*. The Parenting Act "presumes the critical importance of the parent-child relationship in the welfare and development of the child and that the relationship between the child and each parent should be equally considered unless it is contrary to the best interests of the child." *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. at 953, 932 N.W.2d 692 at 708. The Parenting Act also states that the best interests of the child require, among other things, "appropriate, continuing quality contact" between the child and parents who have shown the ability to act in the child's best interests. *Id.* at 953-54, 932 N.W.2d at 708. The Parenting Act neither expresses nor suggests a default position favoring or disfavoring any particular custody arrangement, even one agreed to by the parents, and instead requires that all such determinations be based on the best interests of the child. *Id*.

Here, Caleb generally takes issue with the district court using language contained in Haley's proposed decree, which was offered and received into evidence. He contends that, by doing so, the court essentially entered a default judgment against him finding Haley's testimony more credible and that the court failed to appropriately consider the best interest factors. Although the court did not make explicit factual findings in the decree, the court generally found that its custody determination and the parenting plan were in the children's best interests.

In *Schroeder v. Schroeder*, 26 Neb. App. 227, 237-38, 918 N.W.2d 323, 332 (2018), this court stated:

> In the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party. *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). See Neb. Rev. Stat. § 25-1127 (Reissue 2016). The Nebraska Supreme Court has held that "even where our civil procedure code mandates specific findings, it does so only upon a party's request." *Becher v. Becher*, 299 Neb. 206, 215, 908 N.W.2d 12, 23 (2018). Nebraska case law provides that motions for specific findings of fact pursuant to § 25-1127 must be made "before the final submission of the case to the court." *Stuczynski v. Stuczynski*, 238 Neb. 368, 370, 471 N.W.2d 122, 124 (1991).

Here, Caleb did not make a request for the district court to make specific findings of fact, and therefore, the district court was not under any obligation to provide specific findings. Further, the court's failure to do so does not render the decree a default decree in favor of Haley, nor does it assume that the district court failed to properly consider the best interests factors. Based on our de novo review, we find that the district court did not abuse its discretion in awarding sole legal and physical custody of the parties' children to Haley. The evidence established that during the marriage and continuing through the parties' separation, Caleb began using cocaine and consuming alcohol, and although Caleb struggled with his mental health including suicidal tendencies, he admitted that he was no longer participating in treatment. Further, while this matter was pending, Caleb was charged with DUI, possession of an open alcoholic container on two separate occasions, possession of a concealed weapon, no proof of financial responsibility, and no operators' license. He also received speeding tickets, one of which showed that he was traveling 100 m.p.h. in a 60-m.p.h. zone. In light of that evidence and giving weight to the fact that the district court heard the testimony and observed the parties, we find that the district court did not abuse its discretion in awarding legal and physical custody to Haley.

CONCLUSION

For the reasons stated above, we affirm the dissolution decree entered by the district court.

AFFIRMED.